FILED

2020 Jan-10  PM 01:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

JASPER DIVISION

DAVID SCOTT FROST,

      Plaintiff,

      V.

:Case No.:6:19-

cv-01319-LCB-JEO

Defendant #1:Sheriff Tommy Moore,of Winston County,Alabama

Defendant #2:Kilby Corrections,Warden  ,Contracted Warden Date's,

April 26,2019 ,et al,Officer's,REceiving,Procerssing :P.O.Box

150 ,Mt.Meig Alabama 36057

DEfendant#3:Alabama Departrment of Correetions,**Commissioner Jefferson Dunn;**  Limestone Correctional Facility,Corizon Medical services,,

Physician',Doctor'clinic.LPS's.

FINAL AMENDED COMPLAINT

I:The Parties to the Compdaint

    A:    Mr.David Scott Frost,[Hereinafter "Frost[:AIS #:307324""Frost]:

Frost is now a prisoner in the Alabama Department of corrections

(ADOC) who has diabetes II ,with mental disorder's. As explained

in greater detail in the factual in the factual allagations,[At

11:00 AM FRost was returning from lunch ,and was advised by

Limestrone Correctional Facilities, officer,at Cross-over gate

to report to medical services at Limestone,],the Court may consider,;

as Frost,plaintiff has been denied due process,provided grossly

inadequate care for his illnesses.The Sheriff, Tommy Moore,subjection

of the plaintiff "Frost, to unreasonable restraint's  in this

action and the Sheriff's alleged creation of dangerously inadequate

medical condiction's,violent conditions of confinement,and Const-

itutional violation baced on the sheriff,Warden's "Kilby Officvial's,

Prison placement in punitive isolation incarceration without

penological justification,a violation constitutionally based
on the Sheriff's ambulatory Kilby COrrections,Correctional officer's
receiving Frost,and their failure to provide the plaintiff necessary
mental health treatment,medical care for his diabetes,and the
subjection of plaintiff to punitive,isolations,harmful condition's
of confinement,and the deliberate indifference to his serious
medical needs, a constitutional violation based on the Sheriff's
and Kilby Facilitity's processing officer's isolation in a dis-
prtoportionately punitive manner with deliberate indifference,,(At
11:15 AM. Frost returned to law library after being advised by
Corizon Medical "Exh.#1 aboard    "stating Date received 12/2/19
stating "you have not filled out any sick call request form for
above complaints.Please follow the sick call process in order
to be evaluated and feferred to the medical provider if necessary,
Frost is again delayed adequate health care,abd being provided
grossly inadequate health care by inadequate health care official's,
Limestone,Frost has turned in health care requet's,contrary to
the allegation's listed in Frost Exh.#1 aboard,added defendant's,Parties,
DEfendant's,#3"Id.":The Fourteenth Amendment requires remedial
action by the judiciary.Plaintiff David Scott Frost is currently
incarcerated at Limestone Correctional facility,Alabamna,Population
"K.Unit.28779 Nick Davis Road ,Harvest Al.35749

B:    THE DEFENDANTS:

[i]: Defendant Tommy Moore is the Sheriff of Winston County,as
Sheriff,he is responsible for acting in the line and scope of
his duties as a sheriff.[Code of alabama Title 14 Criminal Correctional
and detention Facilities §§ 14-6-1 through 14-6-22;§§ 14-6-1
through 14-6-109;§14-11-4;and as specifically,responsible for
ensuring that his Jail and officer's operate in a manner that

-2-

--is consistent with the United States.He is sued in his official,personal individual capacity.Winston County Sheriff is responsible for Winston County Alabama.

 2:Defendant '2:'Kilby Correctional Facility Warden,officer's contracted,responsible,and assigned for the oversight of policies,practives, inmates ADOC policies contract's, including medical and nutritional care 14-1-1 Duties of Board of Corrections $ 14-3-1 ; 14-3-9;14-3-12;14-3-14;14-3-15;14-3-16;14-3-34;14-11-2;

 3:Defendant "Alabama Department ofd Corrections,Limestone Correctional Facility, Corizon Medical services,OPhysian,Doctors ,Clinics,L.P.N's, medical provider's,claiming that the A.D.O.C. is in violation of a settlement agreement in the case of Gaddis v.Campbell Class Action CV-03-T-390-N In the United States district Court For the Middle District of alabama in which the Court setout guidelines for the treatment of diabetic inmates in the custody of the A.D.O.C. prison facilities.A.D.O.C. officials are not allowing inmates a proper intakew receiving,medical treatment's, diet. Frost herein ids a person with a disability as defined by statute;is otherwise qualified for the relief/benefits in complaint,question, and is/was excluded from the benefits due to discrimination.42U.S.C.§ 12131 et seq."Chisolm v.McManimon 275 F.3d 315,328-30 (3rd Cir.2000):The ADA prohibits officials from discriminating against inmates with disabilkities.Each defendant cited herein is in violation of clearly    established state and federal laws as well as Art.I§ 1,4,5,6,8,14 Amendments to the United StatesConstitution.

II:Basis of jurisdiction

1.This action arises under Due Process Clause & Eighth and Fourteenth Amendment's to the United States Constitution and 42 U.S.C.§ 1983;42 U.S.C.§§ 12101-12213.

 Jurisdiction is invoked pursuant to 28 U.S.C.§§ 1331,1343.

This Court has judisdiction over the plaintiff's requests
for declaratory and injunctive relief puersuent to 28 U.S.C.§
2101-2202.

## [i]:Prisoner Status:

Factual allegations regarding Frost,Plaintiff,Prisoner
ion the alabama epartment of Corrections herein,diabetes,mentally
deficient,affected,ADA 42 U.S.C.§ 12131 et seq.and 504 Reabilitation
Act of 1973.

## [ii]:Diabetes melitus:David Frostv; A complex,chronic illness.

In prisoner's, persons such as  David Scott Frost herein
a Type II diabetes,the body does not make insulin,a hormone
that facilitates the movement of sugar (glucose) from their
blood into cells throughout the body.Cells in the boödv
use glucose as the principal source of energy that hey need
to knowingly live.Without access to suuéficient amounts
of glucose,the cells in the body must use fat as their source,which
can result in a severe chemical imbalance ("Acidosis").
Insulin also helps the body to store extra fuel as fat.People
with type  2 diaBETES, AS Mr.Frost has been diagnosed herein
and continuepusly denied treatment's, as Frost subject's
to this suit,comstitutional issues,entitlement's,definite
statements as to his claims,Type 2 diabetic,some insulin
is produced in type 2 diabetic,but not enough to meet the
body's needs.In addition,the said cells in a type 2 diabetic
do bnot respond to insulin as they should (insulin resistence)
and glucose does not adequately enter the cells from the
blood.Some type 2 diabetics must also take insulin}others
can be treated with oral medicvation,exercise, and a careful
diet. Approximately On or around Sept.25,19 Frost complained
to this Court to the best of his ability ,Attended school
with a 7th grade education,diagnosed as a diabetic,mental
illness,.Frost complained through prison helper's "as Johnson
V.Avery authorizes, regarding correctional officer's abusing
authorities,violating constitutional rights,arbitrarily
denying,as Frost placed rerquests into defendant's listed
herein complaint's and have received no answer's to or even
been recognized.Frost corrected deficient case 6:19-cv-01319-
LCB-JEO IN US.Dist.Northern Dist.Al., Jasper Div.

-4-

\*\*:
Prisoner consent form filed Nov.7.2019 Doc.#11:
\*\*\*:Doc.13 "Id.Order ,plaintiff paid a partial filing fee of
$58.85 --pursuant to 28 U.B.C.§ 1915(b)(1) and (2),--
\*\*\*\*:Doc.15 "Id.ORDER TO AMEND "FINAL AMENDED COMPLAINT and case
no.6:19-cv-01319-LCB-JEO hereby answered and established:Par's
1-2:½Supra incoerporated":

3:A.D.O.C. for Alabama Department of Corrections , and it's
officiials are in clear violation of Constituti0onal right's,Rules,
regulation's, listed herein,and in violation of an Honorable
Myron Thompson ORDER."All diabetices are being discriminated
against. They have not been provided adequate mnedical attention,David
Frost has not been provided adequate medical attebjon/care./services,is
being denied adequate diabetic davlv diabetic diet,he is diabetic,is
not provided with 100  percent fruit juice on a daily basis to
being denied herein and continues to be denied,see Exh.#1 aboard,Frost
is not given milk three times a day,Frost does not recieve a
snack after every meal.Frost hereby sues these defendant's for
irreperable injuries in the amount of $500,000.00 each named
defendant.These defendant's are in direct violation of the A.D.A.Act
42 U.S.C.§§ 12101-12213 ,In addition toithe Constitutuoin.Disabled
inmates have rights under the A.D.A., and Frost has these right's
herein because he is an inmate in the Alabama Department of correction's,
because he is a diabetic. and continuously denied medical care
by grossly inadequate L.P.N.s. administrator's, responsible medical
care providers in the Alabama Department of COrrection's, and
Limestone Correctional Facility,herein as Exh.#1 aboaefd discloses.
Frost has filmaildrop boses and is again denied/delayed medical
health care.The United  States Supreme Court has held these federal
statutes enforceable and applies to jails,Defendant Moore, Kilby
Supra,Limestone A.D.O.C. and all prisons.See Pennsylvania Dept.of
Corr's. v./ Yeskev 524 U.S.206 (1998).Chisolm v. McManimon 275

F.3d 315,328-30 (3d cir.2000). The Eleventh Circuit Copurt of
Appeals has held Congress acted constittuionally and did not
exceed its authority when it enacted A.D.A.(42 U.S.C.§§12101
Et.Seq.) Pursuant to its enforcement powers under § 5 of the
Fourteenth Amendment Amendment,with intent that statute aply
to disabled prisoners.Amos v.Marry Dept.of Corr.Servs.(1999)
Harris v.Coweta County 21 F.3d 388, (11th cir.94): "At the
same time,the Alabama Supreme Court has stated that sheriffs
do not have absolute immunity in all circumstances.SeeColeman
v.City of Dothan 598 So.2d 873,875 n.2 (Ala.92)("We are careful
to point out ...that a sheriff is not entitled to absolute immunity
in all situations."White v.Birchfield 582 So.2d 1085,1088 (Ala.91)("[B]v
this opinion,we as are not to be understood as granting absolute
immunity to a sheriff in all situations.").See Ala.Code  § 14-
6-19 (1975)Obtaining medical attention for sick prisoners is
a statutory duty of Alabama sheriffs.Parker v. Williams 862 F.2d
1471,1480 (11th cir.1989)In parker held that Alabama sheriffs
are the final repository of county authority with respect to
the operations of jails and the huring of jailers and therefore
the county could be held liable for the sheriff's hiring policy,which
resulkted in the inmates injuries.se4e id.1480.Thje parker court
based conclusion on Alabama law.see 862 F.2d at 1478-80,and its
holding continues to be the law of this circuit.Lancaster v.
Monroe County,Ala.116 F.3d 1419,1428-1429 (11th cir.1997):
That a privately emploved prison physician acts under color of
state law for the purposes of liability under 42U.S.C.§ 1983
remains wel setteled.See West v.Adkins 487 U.S.42,108 S.Ct.2250,101
L.ed.2d 40 (1988):
Frost would request  that the contract between Alabama
Department of Corrections,Limestione Correctional Facility,-
be added to the record with Kilby prison,Defendants Tommy Moore
et al.,

Frost requested that the contract between Winston County,and
Alabama Dept. of Corr's.,health care serv's be provided by
defendant's. The Court be added to the record,during relevant
times. The eleventh Circuit would have the inherent power
to supplement the record with materials not submitted to
the district court.See Young v.City of Aughusta Ga.Through
Devaney 59 F.3d 1160,1168 (11th cir.95):Jones v.White 992
F.2d 1548,1566-68 (11th cir.93):Cabelceta v. Stanfdard Fruyit
Co. 883 F.2d 1553,1555 (11th cir.89):Rossw v.Kemp 785 F.2d
1467,1474-76 (11th cir.86):Dickerson v.Ala,667 F.2d 1364,1367
(11th cit.82):

The equal protection clause essentially requires that
all persons similaerly situated be treated same.Mackenzie
v,City of Rockledge 920 F.2d  1554,1559-(11th cir.1991);

The substantive due process doctrine proscrib es deprivation
of a propperty interest for an improper mptive and by means
that were pretextrual,arbitrary and capricious,and ... without
any rational basis. Frost has a constitutional right of due
process ,property interest"Estelle v.Gamble 429 US  97,50
L Ed 22d 251 (1976);"Contract '2:03cv390 #50 IN THE UNITED
STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA
CLASS ACTION CV-03-T-390¹N.Michael Gaddis,et al.,vs. DONAL
CAMPBELL ,Defendants REVISED SETTLEMENT AGREEMENT:

Personal securityy,like medical care,is one of life's
necessities to which inmates are entitled in minimal civilized
measure."Rhodes v.Chapman 452 U.S.337,347,101 S.Ct.2392,2399,
69 L.Ed.2d 59 (1981):Wheeler v.Sulļivan 599 F.Supp.630,640
(1984):½ The defendant's knows,but is deliberately indifferent
to the faét that this inadequate care and treatment has resulted

-7-

in serious and substantial harm to the plaintiffs and continues
to reate a serious risk if further harm to them.Under the
substantive due process theory government regulation does
not effect a taking for wehich the Fifth Amendment requires
just compensation;instead,regulatioin thgat goies so far
that it has the same effect as a taking by eminent domain
is an invalid exercise of polic epower,violative of the due
Process Clause of the Fourteenth Amendment.Should the Government
wish to accomplish the goals of such regulation,it must proceed
through the exercise of its eminent domain power,and,of course,pay
just compensation for any property taken.The remedy for a
regulation that goes too far,under the due process theory,is
not "just compensation," but invalidation of the regulation,and
if authorézed and appropriate,actual damages.Williamson
Sounty Planneng Comm'n. v. Hamilton Bank 473 US 172,87 L
Ed 2d 126,105 S Ct 3108 ;FRost filed suit against  Winston
County    Sheriff and its members and staff pursuant to 42
U.S.C.§ 1883 alleging that the Sheriff/commission had taken
him ,it's property without just copmpensation byrefusingt
to provide Court Order,evidence to require his delivery to
and placement in the hands;treeatment of Kilby Prison.The
government regulation may effect a taking for which the Fifth
Amnendment requires just comnpensatoin and assuming further
that the Fifth Amendment requires the payment of money damages
to compensate for such a taking,the jury in this case,would
find that Frost had been denied and that such a temporary
deprivation as a matter of law may constitute a taking.The
Sheriff,defendant's taking regulation that goes so far that
it has the same effe3ct as a taking by éminent domain is
an invcalid exewrcise of the police power,violative of the
Due Process Clause-            /-8-

of the Fourteenth Amendment.Pennsylvania Coal Co.v.Mahon,
260  Us 393,67 L Ed 322,43 S Ct 158,£1922•;Gulf Power Co.V.U.S.998
998 F.Supp.1386,1397 £N.D.Fla.98•:Doty b.City of Tampa 947
F.Supp.469,471 £M.D.Fla.96•: "Brewer v. Blackwell 836 F.S.631,638
£S.D.Iowa 93•:

        The evenys giving rise to Frost's claim arose from putside
institiautton ,

FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFF DAVID SCOTT FROST

        [1]:  Frost is now an alabama Prison inmate who suffers
from a serious mentgal disorder.Frost bring;s this suit. Prisoner's
in alabama with serious mental illness do not receive,adequate
care. David Scott Frost was in Hill Crest when he was 12 years
old. Frost was in treatment "North ecatur Mental Hospital
approximately 15 years ago.

        Frost languished for months without access to neccesaary
care,suffered from severe hallucinations,and he decompensate
into catatonic states and  bipolority. Frost recieve mental
care in  Jasper Hospital mental ward twice.Two times in Riberben
in ECM Florence Al.,, Prisoners retain the essence of human
dignoity inherent al persons.Respect for that dignity animates
the eighthA mendment prohibition against cruel & unusual punishment.The
basic concept underlying the eighth Amendment is nothing less
than the dignity of man.Atkins v.Virginia 536 U.S.304,311,122
S.Ct. 3242,153 L.ed.2d 305.Hill v.Dekalb Reg.Youth Ctr.40
F.3d 1176,1186 (11th cir.94):Estelle V.Gamble 429 U.S.97,103,97
S.Ct. 285,50 L.ed.2d 251 (1976):In re Kember 136 U.S. 436,447,10
S.Ct.  930,34 L.ed.519 (1890):Rhodes v.Chapman 452 US 337,69
L.ed.2d 59,101 S Ct 2392:Weeler v.Sullivan 599 F.Supp.630,640
(1984):Brown v.Thompson 868 F.Supp.326,330-331 (S.D.Ga.94):
McElligott v.Foley 182 F.3d 1248,1254-1255 (11th cir.99):Hill
v.Dekalb Reg.Youth Det.Cent.40 F.3d 1176,1184-1185(11thcéu.94):

[ii]:The events giving rise to Frost's claims arose in an
institution described as  Diabetes mellitus, ,sustained injuries
related to the described events herein.

[ii]: Plaintiff David Scott frost is a dependent diabetic
inmate currently incarcerated at Limestone Cortectional facility.He
is 48 years old.Frost was diagnosed with diabetes 8-9 years
ago to the best of his recollection at the age of 42.Although
defendant's deliberate idiffernce̩e was diagnosed  with diabetes
when he entered Kilby Prison.
David Scott Frost alleged he was held in Franklin County approx-
imately 1 wee4k,when he was forcefully taken and delivered
to Kilby Corrections [THE PRISON].Complaint Pg's.1-5 incorporated):
When Daviod Scott Frost herein were delivered to Kilby (complaint
1-5 thoughout pg.16 fully incorporated herein.") Tolert v.Eyman
$34 F.2d 625.Frost would show this Honorable Court that he
was not a sentenced prisoner required to be incarcerated at
Kilby he was  seized,confined,carried away by force or frauf.(ADOC)
Defendant Sheriff Moore,Alabama epartmewnt of Corrections Defendant's,
The  Sheriff.as Frost was in Franklin County Jail,for queptioning
about a pawn shop.Frost did not have or recveive any charges
whatsoever.TheF ranklin county Sheriff's office was conforming
Frost's statement about a pawn shop investigation inquiry and
trhe next day an officer (Tommy Thrasher) came by his cell and
otdered Mr.Frost to pack up,that he was today going to prison
(KIilby):The jailer took Mr.Frost'from his holding cell,Frtost
in his contro; pbeyed order's.Frost asked Mr.TRhrasher why he
was going to vet prison ? Officer Thrasher told Mr.Frost that
Kilby would figure that out once Frost goy to Kilby (ADOC).

Mr.Frost arrived at Kilby Cor.Fac.,(ADOC).Frost was nervous,experienced
fears,mental,physical distress,that when Frost arrived at Kilby
the officer at Kilby processing was yelling,threateniung Mr.Frost
vith physical corporal punishment;--10-

Frost requested to call an atorney,to be allowed to, and was
denied,before he was incarcerated because he did not have a court
order,,and he was incarcerated;and Mr.Frost did not do any act,actions
tp warrant this treatment from officer's at Kilby Prison.

Frost did comply with whatever the officer ordered of Frost,in
shock.Furthermore,while he was being held in holding cell,Frost
was thgen placed in lockup.Mr.Frost suffered sever back pain/
mental anguish,and his cries for medical assistance were
completĕly ignored. Frost submittes to the court substantial
evidence of such quality and weight that reasonable and fair
minded men in the exercise of impartial judgment,Nefff v.Kehoe
708 F.2d 639, (11th cir.1984):Boeing Comp.v.Ship,mam 411
F.2d 365,375-(1969);Long v.Shorebank Dev.Corp.182 F.3d 549,560-
561,(7th cir.1999)..

        The Sheriff,defendant #1 Tommy Moore did not legally,properly
escort Mr.Frost to Cenrrtqal booking  at Kilby Correctional
Facility,Prison."Evidence a policy that caused the deprivation
of the plaintiff Frost's rights.Kilby Correction's, defendant's
#2"Id.treated Frost wrong,it's personnel abused Frost,threatened
Frost and with the Sheriff,deputy had a obligation to make
ccinquiry of Frost concerning status.Frost stayed in lockup
for approximately (5) days .1 hundred and 70 hour's, before
Mr.Frost was finally able to get a Lt.Dixon told Mr.Frost,get
you'r fucken ass out of my face with that bullshit boy,which
Frost kindly backed away,realized,          Mr.Frost thought
he was getting nowhere,he was a white inmate under the treatment
of a black correctional officer,.Frost wrote a request slip
to classification advising that Mr.Frost was at Kilby wrongfully
imprisoned.Classification advised Mr.Frost thsat they were
looking into why Mr.Frost was at Kilby.The next day Frost

-11-

was taken to the warden's office,when escorting officer advised
Frost that this was the (5th) fifth time this has happened
in his (25) twenty five years that he has worked there.
Approximately "7-8" month's ago,Frost wrote classification.Mr.Frost
had been there incarcerated an estimated 28 days then Mr.Frost
stayed 10 day's in the hole,[referred to in place of protective
custody,] and regarding Correctional officers abusing authorities,arbitrarily
denying freedom from external (Noi.2011-160,Winston County  Terroristr

    Threat,"Ala.Cri.Code  § 13A-6-40 (as governmental restraint,compulséon,or
    interference in engaging in the pursuit or conduct to the extent
    that they are lawful and not harmful to others.David Scott Frost'
    freedom from physical restraint.Mr.Frost was confined,and carried
    away by force or and fraud and upon a demand of Winston County
    case No.2011-160.

                    B:ELEMENTS OF SECTION  1983

        In determining whether or not the defendants are liable
under section 1983,the Court has stated the following in its
previously cited order ;To impose § 1983 liability on a local
ngovernment actor for failing to act to preserve a constitutional
right,a plaintiff must establish:(1)that he possessed a constitutional
right which was deprived;(2) that the defendant has a policy
or custom;(3) that the policy or custom constituted a deliberate
indifference to the plaintiff's constitutional right;and *(4)
the policy or custom wass the moving force behind the deprivaɣion./

        [1]:As to tɦe first element.Plaintiff David Scott Frost
possessed a constitutitonal right to have a judicial determination
that probable cause existed for his continued detention with
"Gerstein v.Pugh,420nU.S.103,95 S.Ct.854,43 L.ed.2d 54 (1975)(holding
that "the Fourth Amendment requires a [prompt] judicial determination
ɵf probable cause as a prerequisite to extended restraint of

County of Riverside v.McLaughlin ,500 U.S.44,111 S.Ct.1661,114
L.Ed.2d 49 (1991)(requiring a judicial determnination ,determin-
ation of probable cause within forty-eight (48) hours of the
warrantless arrest,absent ext6raordinary circumstances);Powell
v.Nevada ,511 U.S.79,114 S.Ct.1280,128 L.ed.2d 1 (1994)(deeming
a four (4) day delay in the defendant's probable cause determin-
ation as "presumptively unreasonable under McLaughlin's 48-
hour rule)". Ckearky,.Frost ,the plaintiff did not "carry the
key to the porison"-on ly the issuing judgte carried that  key
for this individual.The holding of Gerstein,on its face,applies
to any "extended restraint of liberty following arrest.420 U.S.at
114,95 S.Ct.at 863;cf.Soldal v.Cook County,Illinois,506 U.S.56,65-
67,113 S.Ct.538,546,121 L.ed.2d 450 (1992)(applying the Fourth
Amendment protection against unreaso9nable searches and seiz-
ures in a civil case).Frosts liberty was extensively restrained
by the defendants.The defendant's simply cannot hide behind
some label in order to defeat this plaintiff's basic constitutional
right. The Court should conclude that the plaintiff possessed
a constitutional right,the Court readily determines that this
right was deprived.

Frost was placed into another cell wherein he was secluded
in isolation for another 10-days.After the fact's,notice to
Warden,official's, that Frost was not supposed to be there.The
Warden visited Frost again and advised Frot that Winston County
would be there to pick up Mr.Frost the next day.The next day,contrary
thereto "Wardeh's instruction's.The next dqay arrived and Winston
County did not.Winston County did not come and pick up Mr.Frost
the next day as Frost were advised by official charged with
spoecial supe4rvisory duties or with the enforcement of speci6fed
laws or regulations,charged by statutes in title 14 & 15 Code
AQ1a.1975.                        -13-

The defendant's unlawfully arrested and imprisoned the plaintiff
Mr.Frost,as a proximate consequewnce of the defendant's said
action's, negligence,the plaintiff David Scott Frost was caused
to suffer the above and following injuries and damages.David
Scott Frost and laws were withheld.United States Constitution's
Amendments theretoFrost wrongful incarceration § 29-2-150 Code
Ala.1975§§ 13A-6-41;Samples v.United Strates 121 F.2d 263 (5th
cir.41):United states v.Russell 255 U.S.138,41 S.Ct. 260,65
L.ed.2d 553 (1921):Officer's and employees chapter 41 AS Administrative
Office of the United States Courts § 404.Duties of director
generally,challenge or walidity of incarceration,claims for
damages,unlawful confinment,damages under the State and Federal
Rico Statutes,Unlawful incarceration §§  29-2-150 to 29-2-165
Code of Alabama 1975,andF ederal Rico Statutes 18 U.S.C.§§ 1964(C).18
U.S.C.§ 1962,recover threefold damages he sustains and the cost
of the suit,including a reasonable attorney's fee,18 U.S.C.S.§
1962;18 U.S.C.§ 2;(Whoever commits an offense against the United
States or aids,abets,counsels,commands,induces or procures its
commission,is punishable as a principle
Pribcipal.(b):18 U.S.C.S.§ 201;§ 1028;§ 1503.

Havinfg concluded that the plaintiff possessed a constitutional
right,the Plaintiff "Frost illegal incaeceration went on for
9 more days "198 hours,11,880 "Eleven Thousand Eight hundred
and eighty minutes intentionally to restrained by physical force
or the threats of physical force without privilege or authority.On
the ninth day,approximately the eleven thousand eight hundredth
and 60 minutes,the Warden advised Mr.Frost that Franklin County
is coming to get you.Mr.Frost.

-14-

FRanklin County Sheriff Oliver delivered,did finally return
to get Mr.Frost.Frasnklin County transported Mr.Frost to Franklin
County Jail.

"C: MR.FROSTS LIBERTY WAS INFRINGED WITHOUT DUE PROCESSFrost:

   Proves the second element that each of the defendants possessed
a policy or custom.The defendants conduct in relatioin to the
plaintiff to an exiting policy.The Warden possessed final making
authórity and consequently,the county,.Winsaton.See Jett v.Dallas
Indep.School Dist.,.491 U.S. 701,737,109 S.Ct.2702,2723-24,105
L.ed.2d 598 (1989):City of St.,Louis v.Praprotnik,485 U.S.112,127,108
S.Ct. 915,926.99 L.ed.2d 107 (1988)(Stating that the authority
to make  municiple municipal połicy is necessarily the authority
to make final policy).Given that Warden of Kilby prison "Defendant
# 2 "Id.is the official policy maker for Kilby Prison,policy
to release x an inmatte only if it had a judge's order,an "unarrest"
decision by a law enforcement officer,the decision of a probation
officer,or by the direction of the county contract,Alabama Department
of correction's,Kilby prison polikcy to hold inmastes indefinitely-
even though there has never been actual judicial determination :
Inm the case at bar,,Frost alleges that the County Winston,and
Alabama Department of Corrections,Kilby, violated these rights
by failing to ensure that Frost received due process.Unlibe
Buenrostro v.Collazo,777 F.Supp.128 (D.P.R.1991) and Bailey
v.Askew 486 F.2d 134 (5th Cir.1973) judges, Judge Talmage
Lee Carter did not sign any commitment order,valid or otherwise.
If plaintiff was sent to the State penitentiary with a  facially
valid commitment  order,there certainly can be no duty on
the part of the epartment of corrections to verify or otherwise
review the correctness of the judicially issued order."Buenrostro
"Supra,at 135 (emphasis added).Unlike Buenrostrro and Askew

-15-

complaints,Frosts complaint alleged suficient facts to state
a valid section 1983 claim against Sheriff,Winston County,Alabama
Department of Corrections Def's.#1 & 2 "Id".

Defendant's #1 & 2 "Supra, may be held liable for constit-
utional violations under the "public function " theory.With
the exception of slavery,the federal Constitutio does not
generally restrict ")i]ndividual invasion of individual rights..."The
Civil Rights Cases,109 U.S.3,3 S.Ct.18,27 L.ed.035 (1883):However,when
a governmental entity delegates one its traditional or "public
functions" to a private entity,the privaqte entity may be
helod liable under the Constitution with respect to its performance
of that function.Marsh V.Alabama,326 U.S.501,66 S.Ct.276,90
L.Ed.265 (1946);"If State action is present and the activities
satisfy the statutory test artieulated by the Supreme 'Court
as modified by this court,circuit,the activities may be declared
unconstitutoional.See Burton V.Wilmington Parking Auth.,365
U.S.715,81 S.Ct.856,6 L.ed.2d 45 (1961);Mann v.Hillsborough
County Sheriff's Office 946 F.Supp.962,967 (M.D.Fla.96):This
is explained in Harris v. City of Roseburg 664 F.2d 1121,1127
(9th cir.1981)[T]here may be a deprivation within the meaning
of § 1983 not only when there has been an actual "taking"
of property by a poilice officer,but also when the officer
assists in effectuating a repossession over the objection
of a depter or so intimidates a debtor as to cause him to
refrain from exercising his legal right to resist a reposession.Mann
v.Hillsborough County Sheriffs Office 946 F.Supp.962,967
(M.D.Fla.96):Jeffries v.Georgia Res.Fin.Auth.678 F.2d 919,924-
25 (11th cir.)Cert.den.,459 U.S.971,103 S.Ct.302,74 L.Ed.2d
283 (1982):Gerber v.Longboat Harbor North Condominium Inc.,
757 F.Supp.1339,1341 (M.D.Fla.1991):

-16-0

For example,"if a state contracted with a private corporation
to run its prisons it would no doubt subject the private
prison employees to§ 1983 suits under the public function
doctrine.Plain v.Flicker 645 F.Supp.898,907 (D.N.J.1986):

Therefore,because Winston County Sheriff delegated a
public function ,Frost may seek to hold Winston,Sheriff liable
under section 1983 for depriving his liberty without due
process.

### D:COUNT II:FALSE IMPRISONMENT,WRONGFUL INCARCERATION:

Alabama Courts define the tort of false imprisonment
as"False imprisonment " consists of unlawful detemtéon of
person of another for any length of time whereby he is deprived
of his persdonal liberty.Code 1975 § 6-5-170.Big D,Inc. v.
Cottingham ,634 So.2d 999 :

For the reasons stated earlier ,this court should find
that Frost's allegations support a section 1983 claim.The
same set of facts,if proven,could easily constitute false
imprisonment. In other word's: Wrongful incarceration compensation
for §§ 29-2-150 to 29-2-165 Act of Legislature awarding compensation.

In Gilmere v.City of Atlanta 737 F.2d 894 (11th cir.1984)
this court explained that a municipality may be liable under
42 U.S.C.§ 1983(1982) IF UNCONSTITUTIONAL ACTION IS TAKEN
TO IMPLEMENT OR EXECUTE A POLICY STATEMENT,ORDINANCE,REGULA-
TION OR OFFICIALLY ADOPTED AND PROMULGATED DECISION.GILMORE
AT 901.

Liability may also attach where the unconstitutional
deprivation is "visited pursuant to government 'custom' even
though such custom has not received formal approval through
the bodies makinhg channels."Gilmere at 901(quoting Monnell
v.De-part. of Soc.Serv's.436 U.S.658,at690-91,98 S Ct 2018

-17-

at 2035-36,56 L.Ed.2d 611,&ev'g in Part Monroe v.Pape 365
U.S.167,81 S.Ct.473,5 L.ed.2d 492 (1961).The constitutioinal
deprivations were the result of official policy,however,
there is evidence sufficient for a jury to find that  Frosts
unconstitutional incarceration was the result of an official
policy. Sheriff  Shannon Oliver escorted Frost to processing,then
Kilby corrections course of business,in accordance with what
they considered to be governmental policy..In Trezevant v.City
of Tampa 741 B.2d 335,at 338 "The jury returned a verdict
of $25,000 in favor of the plaintiff and against the HCBJ
and the City of Tampa."The jailer took Mr.Trezevant's valuables
and his belt and shoes and placed Mr.Trezevant in a holding
cell until he could be processed.Mr.Trezevant was in the
holding cell for a total of twenty-three minutes.

   RElief requested :

   With facts established,Frost was transported/sent/left
to/in prison by Wimson County when Franklin County Sheriff
Oliver transported/took David Frost to Kilby prison whom
after 38 days ,approximately [2] two thousand twenty two
eighty minutes and were released due to the fact a Judge
did not order/sentence David Scott Frost to prison sentence
at that time of delivery,in Winston County Case No.2011-160.
Frost would be entitled to a jury award of 2,462,400.00.Machado
v.States Marine-Isthmian Agency,Inc.411 F.2d 584,586 (5th
cir.1969) The Court will not disturb an award unless there
is a clear showing that the verdict is excessive as a matter
of law.Anderson v.Eagle Motor Lines,Inc.,423 F.2d 81,85 (5th
cir.1970).The award,in order ro be overturned must be grossly
excessive ' or ;shocking to the conscience.La-Forrecst v.Autoridad
de las Fuentas Fluviales,536 F.2d 443 (1st cir.1988);

The standard for  review of this issue was stated in Del
Casal v.Eastern Airlines,Inc.634 F,2de  295 (5th cir.Unit
B 1981):Decisions of the United States Court of Appeals for
the FifthCircuit handed down prior to the close of business
on Sept.30,1981,are binding as precedent in the Eleventh
Circuit.' Bonner v.City of Prichard,Ala.661 F.2d 1206 (11th
cir.1981):

COUNT III:Defendant's 32 & 3 "Kilby corrections,Warden,Contracted
Warden dates April 26,2019 ,et al Officer's receiving,processing:P.O.Box
150 Mt.Meig Alabama 36057 :Defendant #3:Alabama Department
of Corrections ,Limestone Correctional Facility,Corizon Medical
Services,Physician,Doctor' Clinic's LPN,;

Plaintiff seeks compensation,puynitive damages for hgis
distress,emotional injuries,pain and suffering as a result
for aqll the reaswons stated herein and documents submitted
to supopoirt plaintiff: Defendant's herein could not state
a cause of action that woyid bar this Court from permitting
Plaintiff David Scott Frost from proceeding with this cause
of action,and that the complaint herein be allowed to proceed
with prejudice,as to all defendant's #1-3 "Id",hereby incorp-
orated.

Due to the facts stated:That defendant's violated Due
Process Clause,8th Amendment,4th,5th,6th and 14 th Amendments
to the United StatesConstitution thereto,and by failing to
provide adequate medical care and treatment to avdid Scott
Frost.

Commissioner Jefferson Dunn of the alabama epartment
of corrections is responsible for the development and oversight
of all ADOC policies and practices,including medical and
nutritional care in all-

-19-

--in all "ADOC facilities and the monitoring and oversight of healthcare
services that they have been contracted;contracted out to private provider's
Defendant Jefferon would be responsible for ensuring that alabama Prisons
operate in a manner that is consistent with the Uniuted ,united States
Constitution.He would be sued in his official capacity.

Thje medical care provided to inmates with diabetes in the ADOC
is grossly inadequate in every respect.This inadequate care includes,but
is not limited to :failure to promptly diagnose diabetic inmates,(See
Plaintioff's exh.# 1 aboard, Frost has put request slip's/form's into
Legal mail drop boxes, in the dormitory's,sick call request slip's,
and exh.#1 were returned and Frost still has been denied medical care,treatm
treatment's once proscribed,1;failure to adequately monitor class member's
' blood sugar levels;failure to diagnose and provide adequate,timely
care for injuries to and infections of claws member's' feet;failure
to diagnose and provide adequately,timely care for diabetics ,class
member's ' eye problems;failure to provide classs members with an approriate
individualized meal plan;and failure to provide class members with
education about their illness,particularly their nutritional needs.

   a.Monitoring and control of Blood Sugar:
   Diabetics mustr be provided the opportunity to control blood sugar
within normal physiologic ranges through daily adjustment of insulin
and dietary intake based upon frequeht blood sugar monitoring throughout
each day.Professionally, prisoner's with diabetes in the ADOC are ohly
given finger stick blood sugar tests on an infrequent basis;the frequency
depends on the prison at which they are incarcerated.At Limestone,inmates
treated with insulin are given two finger stick blood sugar tests per
month:The frequency may very widely among inmates but is generally
four times per day for two days every three months.

b.Heboglobin (HBA1C) Testing: The Hba1c blood test must be performed every three to six months (depending on the diabetic) to assess adequacy of long term blood glucose control.The frequency ofHbA1C tests provided by the ADOC varies widely,both among prisons and between inmates,but the test is typically given only once per year.

c.Testing for Diabetes Complications:Diabetics must be tested on a regular basis to diagnose and provide timely treatment for serious complications that may result from their diabetes.Thyey must receive an annual a dilated funduspopic funduscopic [SIC]eyel eye ezam by an apopropriately trained eye professional to determine if they have diabetic retinopathy,glaucoma,or cataracts.The plaintiffs are never given dilated eye exams.Diabetic's feet must be examined during every medical encounter;the plaintiff's feet are rarelky,if ever,examined.Doiabetics must be given an anual, annual urine microalbumine test to identify incipient kidney disease;the plaintiff is rarely,if ever,given such a test.A fasting blood lipid test must be performed annually to assess diabetics' cholesterol and triglyceride levaks;this test is rarely ,if ever , performed.

d.   Evaluation by a physician:Diabetics should see a doctor at least every three months.The plaintiff rarely sees a doctor;HCU,of the chronic care clinic ,See Plaintiff's ehibit #1 Medical grievance aboard; -care clinic is generally staffed by LPN's who are in-competent to provide even minimally adequate chronic care evaluat-ions.

e:   Diet:Diabetics muct be provided with an indiviüualized meal plan that enables them to control their carbohydrate intake in relatioin to their activity and insulin dose.A diabetic's meal plan depends on his age,weight,weight goals,and activity leval; additional nutritional goals include control of body weight and

-21-

control of body weight and control of blood cholesterol and other
fats to prevent diseases of the arteries.Prisoners with diabetes
must be given instructions on how to adhere to a meal plan based
on the facilities' menus.Limestone,ADOC inmates are not provided
with individualized meal plans,nor are they provided witth the
information they need to choose appropriate types and quantities
of foods to eat that correspond to their individual needs.The
"diabetic meals" in the Adoc /Limestone? Correctional Facility
are almost identical to the regular meals.Plaintiff has not been
seen and is still being denied medical care,attention,as Exh.#1
verify's, and Frost,plaintiff herein has filled out and turned
in another medical request slip for medical care/treatment.ost
has and continues to be forceds  to endure pain's, dizzyness,back
ackes, pains in feet,burning in feet,lower extremeties,and Exhj.#1
Response  is inadeqwuate,is deliberately indifferent to Frost's
serious medical needs constitutes eighth Amendment vioilation
and gives inmate herein cause of action under 42 U.S.C.§ 1983.See
Miltier v.Beorn 896 F2d 848 (4th Cir,1990):42 U.S.C.§ 12101 et
seq.)seeks to eliminate such unwanted discrimination against in-
dividuals with disabilities in order both to guatantee those in-
dividuals equal opportunity and to provide nation with benefit
of their increased productivity.Cleveland v.Policy Mgmt.Corp.
120 F.3d 513 (5th cir.1997).

    F.    Patient education:patient education about diabetes and
self-management skills are an essential component of diabetes
care.There is no education program for diabetics in the ADOC.To
the contrary,inmates in the ADOC are given virtually no information
about diabetics,diabetes or how to manage their illness.

    g.    Prevention and Management of Acute Complications: Prevention
and management of low blood sugar and ketoacidosis are necessary
components of diabetes care.Prevention,recognition and management

of these acute complications of diabetes are grossly inadeqwuate
Of these
in the? ADOC.Limestone Correctional :Defendant's  #3"0d":

h.   Prevention and Management of Chronic Complications:

Prevention and management of chronic complications of eues,feet,kidneys,n
nerves and blood vessels is a necessary component of diabetes
care.Care of chronic complications of diabetes is grossly
inadequate in the ADOC due to failure to provide timely and
effective treatment to prevent disabling damage to eyes,feet
and kidneys.(Plaintiff's Exh.#1 aboard):

        i.   Special Primary Care Needs:Patients with diabetes
have special primary care needs that must be provided routinely
to maiuntain health and prevent disease.FOR example,diabetics
are prone to gum disease and need preventative dental care
over and abnove that required by normal,healthy adults.Primary
care is deficient in the ADOC/Limestone Correctional Facility
due to grossly inadequate clinical evaluation,preventative
care,and follow-up.These deficiencies result from the lack
of care,lack of an organized system of care and indifferent
or incompetent physicians and nurses.

        J:LDeliberate indifference:

        The deliberate indifference to the serious medical needs
of Alabama Inmate avid Scott Frost ?Plaintiff herein ADOC
#:307324,Plaintiff rigthts under the eighth and Fourteenth
Amendments to the United States Constitution through 42 U.S.C.§
1983."Filed Jan.15 2004 IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA MICHAEL GADDIS et al.Plaint-
iffs vs.Donal Campbell Defendant Class Action CV-03-T-390-
N Revised Settlement Agreement Whereas on April 9,2003,plaintiffs
filed suit challenging the constitutional adequacy of the

-23-

medical care provided to persons with diabetes by the alabama Department of corrections (ADOC);and Whereas on July 11.2003,the Corrections ,the court certified a class as consisting of all persons present and future inmates with diabetes who are or will be incarcerated in an Alabama department of Corrections facility;and Whereas the plaintiffs and defendant agree that

itis in their best interests to resolve this lawsuit; Now therefore the parties,by and through their respective counsel,hereby stipulate and agree to the following provisions: A.DIABETES POLICIES AND PROCEDURES:

**1.** The defendant will develop written policies and porocedures (including nursing protocaols) for the management and care of diabetic inmates in the ADOC. These policies and procedures will incorporate the provisions of this settlement agreement.Any medical contractor who contracts with the ADOC to provide medical care to ADOC inmates must abide by these policies and procedures.The policies and procedures will be req2uired  to be included in the medical contractor's policies and procedures manual.The defendant shall also develop written policies and procedures for the ongoing training of medical and correctional staff in the recognition of emergent diabetic situations. All policies and procedures shall be reviewed annually and updated as necessary to be consistent with current ADA (American Diabetes Association) Standards.The current ADA Standards for correcdtional facilities are attached to this Settlement Agreement.The ADOC shall incprporate the relevant terms of this Settlement in any Request for Proposal for medical care submitted to potential vendors.

B.INTAKE SCREENING

2.   **Reception Screening:** Immediately upon arrival,any inmate who identifies his or herself as an insulin-diabetic shall see a physician within 24 hours to conform that the inmate needs to be on insulin and,if so,to ensure that the insulin is continued.

3:   **Intake Screening:**

(a)  Inmates entering the ADOC who are already diagnosed with diabetes shall have a compl;ete medical history and-  have a complete medical history and a physical examination consistent

-24-

with ADA Standards.Ss part of the required medical history,the
defendant shall review the results of any fasting blood sugar
measurement taken prior to placement in the ADOC that have been
provided.

The medical history should focus on th einmates type of diabetes
and, if the inmate is taking insulin,efforts should be made to
differentiate between Type-1 diabetes and insulin-requiring Type-
2 diabetes,in accordance with ADA Sttandards.The frequency of
ketoacidosis as well as hypoglycemia shall be determined,as well
as a histooy history of severe hypoglycemia without awareness
(i.e.requiring the assistance of another person).A history of
any known chronic complications associated with diabetes,including
findings from the last dilated retinal examination,shall be determined.

     (b)  Diagnosis of diabetes:  As part of its routine medical
screening of all inmates entering the ADOC and as part of its
annual physical examination of all inmates,the ADOC shall conduct
a random plasma glucose test.If the rtandom plasma test reveals
a glucose level of 200 or higher,the inmate will be given a second
plasma glucose test within 48 hoiurs ,[SIC] hours. If the second
plasma glucose test also shields yields a glucose level of 200
or higher,the inmate will be diagnosed with diabetes.If on the
otherhand,the second random plasma glucose test yields of glucose
leval of less than 200,the inmate will not be diagnosed with
diabetes,but he or she will be given a confirmatory fasting plasma
glucose test after the inmate arrives at his or her facility.If
the confirmatory fasting plasma glucose test reveals a glucose
level of 126 or higher,the inmate will be diagnosed as diabetic.

     (c)  All diabetic inmates shall ,within a medically reasonable
period of time,receive a screening laboratory evaluation that
shall include baseline laboratory studies consistent with current
ADA standards.Currently,this shall incude a hemoglobin A1C HDL-
cholesterol,triglycerides,total cholesterol,urinalysis for prot-
ein and ketones,serum creatinine,thyroid stimulating hormone
(TSHY when indicated,and EKG. A fasting LDL-cholesterol test
will be performed at the first chronic care clinic that a diabetic
inmate attends after they leave reception center and are assigned
to their permanent facility.

C.blood sugar testing and control

4.Treatment targets for both b;lood glucose and glycated hemoglobin shall be individually established for each diabetic inmate.Targets shall be as possible to those recommended by ADA Standards.

5:    Diabetic inmates,particularly insulin requiring diabetics,shall be afforded the opportunity to have their capillary blood glucose (finger sticks) measured as often as necessary for adequate diabetes contrôl.Diabetic inmates receiving inðulin shall be afforded the opportunity to have their blood sugar (by capillary blood testing) measured prior to each dose (twice per day),with a med-ically necessary adjustment of insulin dose based on the  blood sugar result obtained at that time.High blood sugar found at othere times shall be treated medicaslly,including with an approipriate dose and type øf insulin when medically necessaary.

6.Diabetics inmates shall have the opportunity to have their baseline glycated hemoglobin (NbA1C) measured as a baseline at intake and every thgree months thereafter.If their glycolated hemoglobin level is normal,the interval of testing can be advanced to every 6 months.If test results are not in the target range for that patient,the medical staff shall review maNAGEMENT TO DETERMINE IF MODIFICATION IS NECESSARY TO IMOPROVE BLOOD SUGAR CONTROL.Their management review shall be documented in the medical record.

7.   Diabetic inmates who are compliant with their treatment,but who have inadequate blood sugar control despite routine intervenŧions by facility professional staff,shall be referred to diabetics specialists for consultation and management.

8.Diabetic inmates shall have access to prompt treatment of hypoglycemia,and shall be provided with,or permitted to keep on their persons'.glucose tablets and/or appropriate snacks for use whenever they feel symptoms of hypoglycemia.The ADOC shall stock in the mødical unit injectable glucagon for emergemny treatment of hypoglycemia.

9.Diabetic inmates with high blood sugar and ketosis shall be afforded ready access to health professional staff at any time of the day or night,and provided with urgent medical treatment management in an attempt to prevent dehydration,metabolic acidosis, and coma requiring hospitalization.

D.   EYE EXAMS

**10.** Diabetic inmates shall be afforded the opportunity to receive an annual dilated retinal examination by an ophthalmologist who is knowledgeable and experienced in the screening for diabetic retinopathy,cataracts,and glaucoma.Diabetic inmates found to be suffering from complications of retinopathy,cataracts,and glaucoma shall be referred for timely treatment to an ophthalmologist.

E.   FOOT EXAMS

11. Diabetic inmates shall receive a medically appropriate foot exam with monofilament in accoordance with ADA standards initially and as part of a regularly scheduled and formal chronic care clinic.Diabetic inmates shall be provided appropriate footwear (i.e.shoes that fit and which are able to protect their feet from injury) by the ADOC,including special orthopedic footwear prescribed by a physician or nurse practitioner.Foot disorders shall be treated with timely referral for necessary specialty care,and approriate follow-up by the facilities professional staff.Nursing procedures ordered by medical providers shall be provided on a schedule and frequency as ordered/

F.   TESTING AND TREATMENT FOR KIDNEY DISEASE

[Pg.1 2:03cv390*50'Page 2/12 though pg.5 '2:03cv390#50 pg.6/12 incorporated]

12. Diabetic inmates shall have their urine protein tested abneally with a microalbumin test,unless the test has been positive and they are medicated with an ACE inhibotor.Diabetic inmates with proteinuria,or other signs of kidney disease shall recieve medically appropriate treatment,including ACE inhibitors,when medically indicated.

G.   TESTING AND TREATMENMT FOR HEART DISEASE

13. Diabetic inmates shall have the opportunity to have their fasting lipid levels tested in accordance with ADA and National Education Project Standards.Persons with high lipid levels shall be treated with appropiate medicine,including statins.Diabetic inmates with high blood pressure,dyslipidemia,and arterial obstruction shall be treated in accordance with ADA Standards for those diseases.

H.   DENTAL CARE

**14.** Diabetic inmates shal be afforded the opportunity to have a cleaning by a dental practitioner at least once per year.More frequent cleanings shall be provided as medically needed to maintain healthy gums in some patients,and quadrant scaling with hand tools shall be provided as needed to treat established gum disorders.

I.   PREVENTATIVE AND CHRONIC CARE

15. Insulin-depebdent diabetic shall be offered immunization
against influenza annualêy (unless the scrum is generally unavailable).Insu
Insulin-dependent diabetics shall be offered immunization agaânst
pneumoccus once and then repeated after age 64 if more than five
years have passed since the first one.

16. Diabetic inmates shall be offered a full physical examination
by a physician/nurse practioner annually,and shall be enrolled
in a regularly scheduled chronic [2:03cv 390 #50 Page 7/12]-
disease clinic staffed by professionals with trqaining and expertise
in management of diabetics and which follows detailed written
protocols for routine assessment and care.Diabetic inmates with
poor coptrol of their blood sugar should be seen more often,as
medicsally [medically], to improve their clinical control.The
frequency of visits shall be as frequent as necessary for appropriate
medical management of the inmate,buit no less frequently than
qwarterly.

17. Diabetic inmates with numbness,pain,indigestion,dizziness,or
other symptoâs related to patients with nerve damage shall be
offered necessary treatment and when medically necessary,referral
to approppriate specialists.

J.   DIET AND EXERCISE

18. All general population inmates with  diabetes shall be
afforded an opportuinity for daily large muscle exercise of approximately
a one-hour duration.Inmates in segregation shall be afforded
an opportunity for daily large muscle exercise of approximately
forty-five minutes duration.

19. The current ADOC menus for diabetic inmates,"Consistent
Carbohydrate Diet :""and "1800 Calorie Diet," will be revised
to be in accordance with the most current standards for diabetic
diets.These standards are included in the Americvan Diabeties
association's Evidence-PVased Nutrition Principles and recomendations
for the treatment and preventions of diabetices and diabetes-
related Complications,the American Dietetic Association
Manual of Clinical Diabetics,and the 2003
 Exchange Lists for Meal Plabning Diet/nutrient intake as
referenced in these standards include :
a.Less than 10% derived from saturated fats.

     b.Less than 300 mg dietary cholesterol per day

-28-

C.      Nutrient distribution 50% carbohydrates,20% protein, and 30 % fat.

d.      Avoiding fructose as an added sweetener.

20.     The ADOC will include at least two fruit servings per day.The term "fruit" is defined as fresh fruit,canned fruit (water-packed,juice-packed,rinsed or artificially sweetened),or one-half cup of 100% fruit juice.

21.     The menueds will be revised to ensure that the carbohydrate content of meals and snacks is consistent from day to day.(The carbohydrate content of each breakfast may be different from the carbohydrate content of each lunch,dinner and snack,but the carbohydrate content of each type of meal will be consistent from day to day.

22.     The commisary shall offer diabetic items for purchase by iunmates such as sugar substitutes and sugar-free snacks.The commisary shall also sell instant glucose tablets for inmates who suffer from hypoglycemia.

23.     When medically necessary,the ADOC shall provide diabetics inmates with individually-prescribed diabetic meals,as ordered by a phyusician or nurse practioner.

24.     Diabetic inmates shall be provided meals and snacks during any trips putside of the facility,consistent with any special diabetic meals prescribed for the inmate within ADOC.

25.     Inmates who are housed at work-release centers may eat meals outside of ADOC facilities.Any such meqals shall not be governed by the provisions listed in paragraphs 19-24,above.

K.      EDUCATION

8    2:03cv390 #50   Page 9/12

26.    The ADOC shall provide twice-yearly educational and nutritional classes for diabetic inmates.Such education shall be given by a knowledgeable diabeties educator and may be offered individually or to a group of diabetic inmates.

27.    The ADOC shal;l make available and distribute to inmates printed self-care materials,including printed materials created by the ADA. If the supply of such materials is exhausted,it shall be refilled as soon as possible.

28.    ADOC security staff shall be trained to recognize and trat hypoglycewia ,and to recognize the symptoms and signs of other serious metabolic decompensation,and to refer the inmate for appropriate care.The medical unit shall stock,and appropriate staff shall be trained to administer,glucagons.

L.    TIMING

29: @(.    Absent any unforeseen delays that are outside the control of the  ADOC, the Defendant agrees to impdement the new diabetes policies and procedures by November 6.2003. Training of medical and correctional staff in the recognition of emergent diabetic situations shall be completed byDec.31,2003.

m.    CONSULTING AND REPORTING

30.    The contract ,monitor who is employed to mónitor the conract between ther ADOC and the contract medical provider shall monitor this agreement to ensure compliance.The contract monitor shall not be an  ADOC employee.

31.    For a two year period beginning on Dec.1,2003,and ending on December 1,2005,the contract wonmitor will report to plaintiff's counsel his or her evaluation of the ADOC and contract provider's compliance with the terms of this agreement.This report shall include :(1) the monthly monitor reports,including the data upon which    [--0    2:03CV390 #50  pAGE 10/12]--
--  THE REPORTS RELY;(2) DEFICIENCIES FOUND TO EXIST BY THE CONTRACT MONITOR AND ANY RECOMMENDATION MADE BY THE CONTRACT MONITOR TO CORRECT THESE DEFICIENCIESL;(3)_ The contract medical provider's written response to any cited deficiencies and details of any corrective actions that will be taken:(4) any notice by the  ADOC that the contract medical provider has failed to perform adequate corrective actions or is in default of its contractual obligations;

-30-

and (5) any other documents reflecting any evaluation by any entity
of the care provided to inmates with diabetes.

32.  The contract monitor's reports and any documents reviewed
or information obtained during the monitoring period may be used
by either party in an action to enforce the Settlement Agreement
in court or in any new action brought by the plaintiffs. Otherwise
any report by the contract monitor shall remain confidrential.

N.   DISCLAIMER OF LIABILITY

33.  The plaintiffs and DEfendant expressly acknowledge and
agree that this Settlement Agreement does not constitute an admission
of liabilkity by the efendant or the ADOC.


O.  ENFORGEMENT OF SETTLEMENT AGREEMENT

34.  This settlement agreement is not a consent decree,and
is not enforceable in federal court.I"n the event of non-complliance
with any of the terms in this Settlement Agreement,the plaintiffs
may only enforce the Setrtlement Agreement in state court,pursuant
to 18 U.S.C. § 3626(C)(2)(B)

35.  The plaintiffs are not precluded from bringing a new
action in federal court in the event of non-compoliance with the
terms of this Settlement Agreement.In the event that Plaintiff's
current counsel bring suit on any of the issues presented in this
action before ][--10  2@.03cv390 #50  Page 11/12  ]--
December 1,2005 (the end of the consulting and reporting period),
the newly filed action will be considered a related case.All
discovery that has been exchanged to date will be deemed to be
part of discovery in any such new action.All documents provided
to the contract monitor and all contract monitor reports that
were written pursuant to para.27 will be admissible in any such
new action.

P.   DISMISSAL

36.   If the Court approves this settlement Agreement,the
current case will be dismissed wthout prejudice from federal court.

q.   NAMED PLAINTIFF'S RIGHT TO BRING SEPARTATE DAMAGE ACTIONS

37.   This lawsuit was brought for injunctive relief only.
The efendant agrees that the settlement of this lawsuit does not
create the defense of res judicata or collateral estoppel as to
any damage claims brought by any of the named Plaintiffs, and
the Defendant agrees  not to raise such defenses as to any claim
for damages brought by any of tyhe named Plaintiffs.

R:   Plaintiff David Scott Frost is a dependant diasbetic
inmatye currently incarcerated at Limestone Correctional Facility.He
is approximately 48 years oold,diagnosed with diabetes,8-9 years
ago around the age of 42.Although he was diagnosed with diabetes,when
he entered Kilby Prison , officer's ignored Frost's pleas,statmenet's
that he was a diabetic,then he was denied numnerous times as he
continuously attempted to tell the correctional officer's that
he was a diabetic and tha he was suffering,needed his medication's,snacks,
he was not put on the diabetic chronic care list.Dr.Jeffery Long
of Haleyville al. & Dr.Jerry Harrisoi also of Haleyville Alabama
prescribed medications for Frost' treatement.When and throiughout
the days David Scott Frost was taken,delivered to Kilby OP prison
he has been denied adequate access to  medical care. Frost finnaly
got yhrough to medical care Dec.30 2019,and the Physician/or nurse,after
testing  stated his sugar was 120 and   told frost to keep doing
what he is doing, and sent Mr.Frost back to his unit. As descibed
above and herein,patients with diabetes have special primary care
needs that must be provfided rpotinely to maintain health and
prevent disease.PRimary care if,is deficient in the ADOC due to
grossly inadequate clinical evaluation,preventive care,and followup.
These deficiencies result from the lack of an orderly organized
-32-

system of care and indifferent or incompetent physicians and nurses.

S.    The defendants deliberate indifference to the serious
medical needs of Alabama inmates with diabetes violates the plaint-
iffs rights under the Eighth and Fourteenth Amendemnt to the United
States Constitution,as enforced through 42 U.B.C.§ 1983 ,

T.    Sections I.through S incorporated"supra":Frost is a prisoner
with a disability in the custody of the Alabama Department of
corrections ,and Commissioner Jefferson Dunn who violates Title
II of the Americans with Disabilities ACT (ADA),codified at 42
U.S.C.§ 12131 et seq.,and § 504 of the Rehabilitation Act of 1973,codified
at 29 U.S.C.§ 794. ;claims of discrimination on the basis of and
non-compliance  and non-accomodation of physical disabilities,eighth
Amendment violations, and  discrimination on the basis of and
non-accommodation of mental disabilities. State prisons fall squarely
within the statutory definition of public entity and Title II
therefore  "unmistakably includes State prisons and prisoners
within its coverage.Pa.Dep't of Corr.v.Yeskey,524 U.S.206,209-
10 (1998).Moreover,the ADA applies to all of the "many recreational
'activities,'medical 'services  educational and vocation programs
offered by prisons id.at 210;see also Bircoll v. Miami-Dade Cnty.,480
F.3d 1072,1081 (11th cir.2007),and to such basic necessities of
life as use of toilets,showers,sinks.See Schmidt v.Odell,64 F.Supp.2d
101491032-33 (D.Kan.99)(Brown,J.).

U.    Plaintiff David Scott Frost has filed numerous complaint's,
request's, the respoonses he received were wholly inadequate.
The deliberate indifference to the serious medical needs of David
Scott Frost violated plaintiff's rights under the Due Procdess
Clause,the Eighth and Fourteenth amendments to the United States
Constitution,as enforced through 42 U.S.C.§ 1983.

V.    And wherefor,plaintiff prays that this Honorable Court grant the above and following relief:

1:  Declare that the acts and omissions of the defendant's wityh regard to denial of medical care violate the due Process clause,Amendment 8 and Fourteen of the United States Constitution;

2:  Enter injuction requiring the defendant's,his/her agent's,employees,and all persons acting in concert with them to cease their unconstitutional practices;

3:  Award to the plaintiff David ScottFrost 1 Million Dollar's cost's against each defendant established herein,and cost's and
;

4:  Grant plaintiff such other relief as he is entitled,as the Court deems necessary and just.

5:  Alabama Department of Corrections/Limestone Coprrectional Facility is in contempt of its ADA Mental Health Settlement Case 2:14-cv-00601-MHT-TFM  SETTLEMENT AGREEMENT CONCERNING MENTAL HEALTH CLAIMS ARISING UNDER THE AMERICANS WITH DISABILITIES ACT AND § 504  OF THE REHABILITATION ACT OF 1973

6:It is settled that in a pro se § 1083 context.A Complqaint should not be dismissed for failure to state a claim,unless the plaintiff can prove no set of facts and that would entitle him to relief on the merits."McMilliam v.Johnson 878 Fed.Supp.1473 (M.D.Ala.95):Smith v.Wecster 145 F.3d 1231 (C.A.11 1992):Davis V.Bryan 810 F.2d 42,45 (2d cir.1987):

7:    Plaintiff established and states a claim suffcicntly,in the elements of a § 1983 actíon;That:

        (i): The conduct he complains of was committed by a person acting under color of state law,and (ii) That this conduct deprived hiom of a right,privilege,or immunity secured by the Constitution or laws of the United States.Parratt v.Taylor 451 U.S.527,535,101 S.Ct.1908,1912-1913,68 L.ed.2d 420 (1981):

8:    The rules provide that responses and objections for production
of documents,interrogatories are to be served within 30 days."Fed/RCiv.Pro.34
(b).The request unless the Courts grants a shorter or longer time,
The defendants,however have not responded to plaintiff's requests,without
obtaining or even seeking permission from the court,or agreement
from the plaintiff for this delay. It is well settled in Federal
Practice that discovery objections are qaibed if a party fails
to object o interrogatories.See Fed.R.Civ.Pro. 26(a)(1);26(g)(2)(C):
Fed.R.Evid.501.Fed.R.Civ.Pro.37(A)(#).This waiver is enforced
even if the objections are based on a claim of privilege.Mary
and Kelly,Hart and Halman P.C.929 F.2d 8,12 (1st cir.91):

      Shown above and in the next several points,the discovery sought
is not only proper but is highly appropriate and felevant.

      Plaintiff DAvid Scott Frost sent the following interrogatories,production
of documents requests to :[i[];Kilby Correctional Facility,Warden,Receiving,P
Processing P.O.Box 150 Mt.Meigs Ala. 36057  "7.Oct.2019.

      [ii]:    To:Anita Scott Circuit Court Clerk FRanklin County
P.O.Box 160 Russelville Al, 35653  "8.Oct.2019:

      (iii):    To:[ADOC] Central Records Alcornelia Terry P.O.Box
301501  Mont.Al., 36130-1501  "10 Sept. 2019.

      9:    The discoveryt sought is relevant to the claims and defenses
in the case.See Fed.R.Civ.Pro. permits discovery of matters relevant
to the discovery of admissible evidence.In the discovery stages,relevance
is construed broadly to encompass any matter that bears on or
the reasonably could lead to other matter that could bear on,any
issue that is or may be in the case.Openheiner Fund V.Sanders
437 U.S.340,351,98 S.C.t 2380 (1978)(footnote omitted):Weiss v.Amoco
Cpo. 142 F.R.D.311,315 (S.D.Iowa (1992)):

10;Each item sought by plaintiff is relevant to the past mistratment
of Mr.Frost by defendasnt's occurence ibncident's.Ancata v.Prison
Health Services Inc.769 F.2d 700 (11th cir.1985):United States
v.Gold 743 F.2d 800,822-23 (11th cir.1984):Landcaster v.Monroe

116 F.3d 1419,1425 (11th cir.1987):McElligott v.Foley 182 F.3d 1248,1255
(11th  Cir.99):Saunders v.Catham County Board of Corrections 728
F.2d 1367,1368 (41th cir.1984):

In assessing the constitutionality of a particular delay courts
will consider the reason for the delay and the nature odf the
delay,nature of the need.McElligott v.Foley 182 F.3d 1248,1255
(11th cir.99): Washington v.Dugger 860 F.,2d 1018,1021 (11th cir.88)(delay
providing treatments that eliminated pain and suffering at least
temporarily could violate tbé constitution):Frett v.Government
of Virgin Islands 839 F.2d 968,978-79 (3d cir.88)(upholding $200,000
verdict where prison officials knew that inmate Posed a serious
danger to guards and inmates but nevertheless returned him to
general prison population where perfectly foreseable harm occurred):Haley
v.Gross 86 F.3d 630,642-43 (7th cir.96)(affirming jury verdict
of 1.65 million for plaintoiff):

Respectfully submitted :

Pro Se: AIS#:307324 28 U.S.C.§ 1746

LimestoneCorrectional Facility 28779 Nick Davis Road
cHarvest Alabama 35749: K.36.

CERTIFICATE OF MAILING SERVICE

Delivered to prison officials for mailing this 18 '31 Dec.2019
David Scott Frost:

28 U.S.C.§ 1746

*Exh #1*

 **C◯RIZON**
HEALTH.

# Alabama Inmate Grievance

☑ **Medical Grievance**          ☐ **Medical Grievance Appeal**

<u>Check</u> the appropriate above box which identifies the type of grievance you are filing. Be aware that you may not check the appeal box if you have not previously submitted a grievance for the same issue.

| _David Scott First_ | _307324_ | _K 300_ | _12-20-19_ |
|---|---|---|---|
| **NAME** | **AIS #** | **UNIT** | **DATE** |

---

**PART A---Inmate Grievance** _I've been the medical while I've been here I've_
_had a real hard breathing + feet numbness in feet, Kidney failure_
_Back and Belly. In the heart, have cramps + stinging in my_
_feet. Have Dizzy spells_

_____

_____

_____

_____

_____

                          **INMATE SIGNATURE**

**PART B –RESPONSE**                          **DATE RECEIVED** _12/23/19_

_____

_____

_____

_____

                          **CMS Department Head Signature**
                          _12/25/19   636_
                          **DATE**

If you wish to appeal a grievance response you may file a <u>Grievance Appeal.</u> Return the completed form to the attention of the Health Service Administrator. You may place the form in the sick call request box or give it to the segregation sick call nurse on rounds.

<u>MEDICAL ADMINISTRATOR USE ONLY:</u>
☒ Medical     ☐ Dental     ☐ Mental Health     ☐ Other

| | | | | |
|---|---|---|---|---|
| ☐ | I   Quality of Onsite Care | ☐ | VI   Timeliness of Specialty Care | |
| ☐ | II   Quality of Specialty Care | ☐ | VII   Medication Issues | |
| ☐ | III   Access to Onsite Care | ☐ | VIII   Treatment and Testing Issues | |
| ☐ | IV   Access to Specialty Care | ☐ | IX   Care Staff Conduct | |
| ☐ | V   Timeliness of Onsite Care | ☐ | X   Other | |